# B. F. Curry v. The Claysville Cemetery Association, Appellant.

*Corporation—Discretion of board of directors.*

In all matters involving the exercise of what may be called legislative or judicial discretion the directors of a corporation may not delegate such discretion, they can only bind the corporation by acting together as a board.

*Corporations—By-laws—Ultra vires—Statutes.*

By-laws of a corporation which provide that a quorum may consist of less than a majority of the board of directors being in contravention of the Act of May 14, 1891, P. L. 61, are invalid.

Argued April 20, 1897. Appeal, No. 117, April T., 1897, by defendant, from judgment of C. P. Washington County, May Term, 1896, No. 172, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit for services rendered. Before TAYLOR, J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $250. Defendant appealed.

*Errors assigned* among others were (1) In overruling the defendant's objection and admitting the testimony of B. F. Curry; the offer and objection, being as follows: B. F. Curry, the plaintiff on the stand on direct-examination: "It is offered to prove by the witness on the stand that he was employed, or a contract was tendered to him by J. D. Campsey, who was the secretary

of the association ; Campsey at the same time representing that this contract had been made by a resolution of the board of directors ; and that the witness on the stand approached J. R. McLain, the president of the board of directors, to have a change made in that contract, and that he assured him that said contract had been adopted by the board of directors. For the purpose of corroborating the witness and the contract ; and that it was made at a meeting of the directors of the Claysville Cemetery Association defendant." Objected to for the reason that if there was any such contract or action taken by a majority of the board of directors of the Claysville Cemetery Association, the best evidence is the record of that meeting, or in other words the minutes ; and unless such is produced or shown not to exist the secondary evidence is inadmissible in regard to what took place.

By the Court : We think if there was action by the board of directors that that ought to first come in, be put in evidence ; and then if there is any dispute about it we will take care of it later on, if we see it don't come up to our rule. Objections overruled and bill sealed for defendant.

(2) In overruling defendant's objection and admitting minute adopted by three of the board of directors of the Claysville Cemetery Association.

(3) In charging the jury as follows : " From the evidence in the case it appears that prior to April 1, 1895, there was a disagreement among the members of the board of directors of that association, which I believe consisted of six, and which trouble continued on until April 1, 1895, and perhaps until the following fall, and I am not sure that harmony reigns in the board of directors yet. At any rate, in the fall of 1894 it would appear that three of the directors withdrew from the association, that is from actual participation in its deliberations, and that three were left along with the president, who belonged to the association, to conduct the ordinary business affairs of that corporation which required attention from time to time. Under the by-laws which they passed, and which we think are not in conflict with the act of assembly under which the association was incorporated, and its supplements, those three directors and their president were competent—I mean legally competent, to transact the ordinary business affairs incident to the successful

running of the association at that time, and we will hold, and relieve you from the consideration of that fact, that the board of directors as it then existed, that is those that met with their president in such an employment as is alleged here, if there was an employment or contract, were legally competent to enter into it, because it would appear from the testimony that it was such an employment as was incident to and necessary for the running of that association."

(12) In refusing to affirm defendant's first point, which point and answer are as follows : "1. The uncontradicted testimony being that the contract, whatever its nature, on which plaintiff seeks to recover, was not accepted or ratified by a majority of the directors of the defendant association, at any meeting duly convened, said contract is accordingly illegal as far as defendant is concerned and not binding upon it, and there can be no recovery by plaintiff in this case. *Answer :* That point is refused subject to what we have said to you in our general charge ; that is to say, if it was not legally in force—was not a legally constitued board."

(13) In refusing to affirm defendant's second point, which point and answer are as follows : " 2. The minutes or record in defendant's books of date March 25, 1895, being the record of the action of only three of the directors of defendant association, and not a record of any action of a majority of its board of directors at a meeting duly convened, the jury should entirely dismiss said minute or record from its considerations and attach to it no importance whatever. *Answer :* That is refused because it is substantially like the preceding point."

*Albert S. Sprowls,* for appellant.—As the directors of a private corporation form a definite body, this statement points to the conclusion that a majority of the directors of a corporation must be present at any meeting, to constitute a board competent to transact business, unless the charter, articles of incorporation, or valid by-law or usage, confers that power on a less number: 3 Thompson's Commentaries on Corporations, sec. 3913 ; Holcomb v. Bridge Co., 9 N. J. Eq. 457 ; Willocks, 17 Am. Dec. 525 ; Edgerly v. Emerson, 55 Am. Dec. 207 ; Cooper v. Lampeter Twp., 8 Watts, 125.

It is not sufficient for the plaintiff in a case such as the one

in hand, to allege that the secretary had authority to make a contract such as relied upon by the plaintiff; the burden of proof is upon him to prove it. In B. & O. Relief Ass'n v. Post, 122 Pa. 579, it is said : "An agent's authority cannot be shown by his own declarations:" Grim v. Bonnell, 78 Pa. 152; Whiting v. Lake, 91 Pa. 349.

*T. F. Birch,* with him *Andrew M. Linn,* for appellee.—That a transaction, in itself ultra vires, in the more limited sense of the term, may be rendered binding by subsequent ratification is too well settled to permit of argument: Oil Creek R. R. Co. v. Penn. Trans. Co., 83 Pa. 160 ; Kelsey v. Bank, 69 Pa. 426.

The law is equally well settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own : Bredin v. Dubarry, 14 S. & R. 26. Nor is there any distinction, as to the principle of ratification by silence, between a corporation and other principals : Bank v. Reed, 1 W. & S. 101 ; Gordon v. Preston, 1 Watts, 385.

The act of an assumed agent of a corporation was held to have been ratified by the corporation's pleading, in a mandamus proceeding in which it was plaintiff, the existence of the contract made by the agent: Tingley v. Bellingham Bay Boom Co., 5 Wash. 644.

In order to bind the defendant corporation by its acquiescence it is not necessary, as the court below supposed, that notice should have been given to the directors when sitting in their capacity as a board :· Kelsey v. Bank, 69 Pa. 426.

OPINION BY ORLADY, J., July 23, 1897 :

The appellant is a corporation organized under the laws of this commonwealth, the constitution and by-laws of which provide, inter alia, article III. section 7 : "The business of the association shall be conducted by a board of six directors, three of whom shall constitute a quorum. They shall select a chairman and secretary from their own number, and shall report at least once a year at one of the semiannual meetings of the association, and oftener if required. In case of a vacancy occurring in the said board, occasioned by death, resignation or otherwise, it shall be the duty of the secretary of the same to report such

vacancy to the president of the association, who shall thereupon call a special meeting of the stockholders to elect one of their number to fill the vacancy." Section 2 of the same article provides: "The president shall preside over all the meetings of the stockholders, call for the reading of the minutes, preserve order, put all motions, announce results, sign all contracts, accounts, orders and papers of the association, and require the same to be attested by the secretary when necessary to be authenticated, call all special meetings when required by a majority of the stockholders, the board of directors, or when in his judgment the business of the association may require it, and perform all other acts and duties required by the nature of his office, also to preside over all meetings of the board of directors, and shall have the right to vote in case of a tie."

Section 4, of the same article, is as follows: "The secretary shall keep faithful and accurate minutes of the transactions of all meetings of the association and the proceedings of each, the date of the same, countersign and attest all official papers and documents and papers, and perform all other duties required by the nature of his position." The association was incorporated under the Act of May 14, 1891, P. L. 61, which amends the Act of April 29, 1874, P. L. 73, entitled "An act to provide for the incorporation and regulation of certain corporations" which provides specifically: "Section 5. The by-laws of every corporation created under the provisions of this statute, or accepting the same, shall be deemed and taken to be its law subordinate to this statute, the charter of the same, the constitution and laws of this commonwealth, and the constitution of the United States" and under the title of "officers and their duties." it is explicit in limiting the power of the corporation through its board of directors. ". . . . The number of directors or trustees shall not be less than three; one of them shall be chosen president by the directors, or by the members of the corporation. The members of said corporation may at a meeting to be called for that purpose, determine, fix or change the number of the directors or trustees that shall thereafter govern its affairs, and a majority of the whole number of such directors or trustees shall be necessary to constitute a quorum." The language in this particular is the same in the original and amendatory statutes, and must be taken as mandatory.

In the fall of 1894, for some reason not fully disclosed by the record, three members of the board of directors did not attend the meetings of the board, and a dispute arose as to the administration of the affairs of the association.

One I. F. Seamon had been for several years the superintendent of the cemetery grounds, and on December 29, 1894, he was notified by the president and secretary to remove from and deliver up the possession of the building and books of the association; which notice was based on the action of a meeting, at which three of the directors, the president and secretary were present.

Based on the same authority, similar notices were served on Seamon, on December 31, 1894 and March 25, 1895. The minutes of a meeting of the same persons on March 23, 1895 were admitted under objection as follows : " President McLain in the chair, directors present, Dennison, McConehey and Campsey. Directors met at above named time, on motion E. H. Dennison, that Frank Curry be elected to the office of superintendent of the Claysville Cemetery Association, . . . . which motion was carried and said Curry was elected to the office of superintendent on motion of J. C. McConehey,"— " whereas I. F. Seamon, superintendent of the Claysville Cemetery Association, has since October, 1894, refused to recognize the president and secretary and board of directors of said association by withholding from them all papers rightfully belonging to said officers, although by direction of a resolution of the board of directors, the secretary made personal demand on said superintendent, for such papers, and he has refused and therefore be it resolved that we hereby discharge said Seamon from the employ of the association, and authorize and direct the secretary to notify Mr. Seamon to vacate the premises he now occupies, and give to his successor all papers, books, and maps, and any other property he has in his possession belonging to said association on April 1, 1895, which was adopted." It was not shown that the three nonacting directors had notice of this meeting, and they denied the right of their codirectors to act in this matter, because there was not present a quorum for the transaction of business, and acting under the advice of counsel, Seamon refused to recognize or to act upon the action taken by the three directors and president, and continued to act as superintendent for the year beginning

April 1, 1895. At the end of that year Seamon surrendered all property in his possession to a successor, who was elected at a meeting of a board of directors composed of the whole number. B. F. Curry, the plaintiff, brought this suit to recover, under a contract as claimed by him, made through Campsey, the secretary, and McLain, the president, by his signing a written contract which he gave to Campsey; and also under a subsequent ratification of the contract by the board of directors. He did not render any service to or for the association, and both Campsey and McLain denied the existence of the written contract, and the three directors, who assumed to act in the matter, testified that the employment of Curry was conditioned always on the fact that Seamon would vacate the premises in obedience to the notice served upon him.

While there are seventeen assignments of error in the case, the second, third, twelfth and thirteenth present the question as submitted in defendant's first point. (Twelfth assignment): "The uncontradicted testimony being that the contract, whatever its nature, on which plaintiff seeks to recover, was not accepted or ratified by a majority of the directors of the defendant association, at any meeting duly convened; said contract is accordingly illegal so far as the defendant is concerned, and not binding upon it, and there can be no recovery by the plaintiff in this case;" which was answered by the court below, viz: "This point is refused subject to what we have said to you in our general charge: that is to say, if it was not legally in force, was not a legally constituted board," and in the general charge the court said, "Now, gentlemen of the jury, something has been said about the other three directors consenting to or acquiring this claim, or to his alleged contract, that they are not here protesting against the payment of damages. We instruct you that you are not to consider the silence or nonparticipation of those directors who withdrew from the meetings and have not been working, or were not actively with this board of directors at that time as cutting any figure in the case, that is for the plaintiff or for anybody else. They are under the evidence here apparently noncombatants. They have withdrawn from the association, that is perhaps not in the legal way, but they do not meet with what has been declared by one branch of this court to be a legally constituted board of directors to run the

corporation under the circumstances including the three gentlemen, Mr. Dennison, Mr. McConehey and Mr. Campsey with their president, Mr. McLain acting under a by-law of the association, which gives the president the right to vote with them and act with them in all matters that are not in conflict with the act of assembly under which it is created." (Fourth assignment.)

Quo warranto proceedings had been instituted against the then nonacting directors, but no decree was made therein, on which it could be claimed that the right of the three named directors to act as a board for the association had been established.

The controverted action of the three directors and the president was not in regard to or about an emergency matter, requiring the prompt assertion of authority to preserve from loss or destruction any property of the association.

It was merely the attempted substitution of one superintendent for another, the latter having been employed and having been acting in similar work for a number of preceding years. The right of the president to vote is rightly denied, as there was not a quorum of the whole board present at any of these meetings, hence, there could not be a tie vote, which under the by-laws was a prerequisite to his right to vote.

A quorum is necessary for the transaction of business of this and like corporations. The act of assembly under which it has existence provides in plain language the necessary number—a majority of the whole number of such directors, and the action of the three directors, on which the plaintiff's claim is founded was unauthorized.

Neither the president nor secretary of the association was shown by the evidence to have had any authority to act as agent for the association, or in addition to the power conferred by the by-laws defining their duties.

The three directors did not have authority to create a vacancy in the office of superintendent, nor to make a contract for the employment of another to fill his place.

The minutes of the meeting of March 23, 1895, show the meeting was unauthorized, for the reason that less than a majority of the whole board of directors was present; and that the office of superintendent was at that time filled by one who had been regularly elected and was then acting in said office.

While the by-laws fix three directors as a sufficient number to constitute a quorum, these by-laws must yield to the direction of the statute, which prescribes a majority of the whole number of six directors as necessary. "We may settle down with confidence upon this principle—that in all matters involving the exercise of what might be termed legislative or judicial discretion, and which the directors cannot therefore delegate to others, they can only bind the corporation by acting together as a board:" 3 Thomp. Corps., sec. 3913; 1 Spelling on Corps., sec. 375; 1 Waterman on Corps., sec. 68; 1 Morawitz on Corps., sec. 531; Taylor on Corps., sec. 260.

As the directors of a private corporation form a definite body this statement points to the conclusion that a majority of the directors of a corporation must be present at any meeting to constitute a board competent to transact business, unless the charter, articles of incorporation or a valid by-law confers that power upon a less number, and this is the law of the case independent of the statutes of 1874 and 1891, which only declare the imperative necessity in all corporations created thereunder of having present a majority of the whole number of the board of directors to constitute a quorum for the transaction of business, and without a subsequent ratification by the corporation, all acts attempted to be done in defiance of this salutary rule are void.

The alleged ratification of the Curry contract, rises no higher than the original transaction, as at no time did a duly constituted board of directors take action thereon.

The independent action of several members of the board of directors, outside of a board meeting, was not sufficient, unless followed by proof of agency to act therein, or in the usual course of business authorized by the corporation in their office.

This was not done, and the evidence of ratification is as deficient as that in support of the original contract: 2 Waterman on Corps., sec. 269; Allegheny County Work House v. Moore, 95 Pa. 408, and a number of later cases adopt it as the law, that "corporation rights are not to be frittered away by loose and unauthorized declarations made by persons who at the time had no authority to bind the corporation; and this principle applies to individual directors and employees of a corporation as to strangers. Unless they are authorized, the individual mem-

bers of a corporation cannot bind it by an express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations."

The acts or declarations of a director in a corporation will not bind or in any manner affect it, unless they are shown to be within the scope of his ordinary powers, or of some special agency: Twelfth Street Market Co. v. Jackson, 102 Pa. 269; 1 Waterman on Corps., sec. 103; 1 Spelling on Corps., chap. 14.

Nor did the corporation derive any benefit, profit or advantage from the alleged Curry agreement by which it would be equitably liable, as it paid to Seamon the whole of his claim for services during the time the Curry contract was to run.

In the view we take of this appeal, it is not necessary to consider the other assignments of error, and we prefer to reverse on the vital question in the case. The third, twelfth and thirteenth assignments of error are sustained, and the judgment is reversed.